IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA L. ADAMS,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

    Defendant.

Civ. No. 03-6011 AA

OPINION AND ORDER

Kathryn Tassinari,
Drew L. Johnson, P.C.
1700 Valley River Drive, First Fl.
Eugene, OR 97401
Attorneys for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

L. Jamala Edwards
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington 98104-7075
Attorneys for defendant

OPINION AND ORDER–1

AIKEN, Judge:

Plaintiff Sandra Adams brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner granted plaintiff's application for disability insurance benefits beginning December 1, 1999 and denied her application for the period of January 1, 1998 and December 1, 1999 under Title II of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

On June 24, 2000 plaintiff filed her application for disability insurance Tr. 78-80. Her application was denied initially and upon reconsideration, and plaintiff timely requested an administrative hearing. Tr. 65, 69, 71, 74. On March 15, 2001, plaintiff, her husband, and a vocational expert, Mr. Mark McGowan, appeared and testified before administrative law judge (ALJ) John J. Madden Jr.. Tr. 306. On June 25, 2001, the ALJ issued a decision finding plaintiff disabled as of December 1, 1999. Tr. 313. The ALJ found that between July 1, 1994, Ms. Adams's initial alleged onset of disability (AOD), and December 1, 1999 Ms. Adams's RFC allowed her to work as a staff nurse, office nurse or phlebotomist. Tr. 313. On December 17, 2002, the Appeals Council denied plaintiff's request for review, and the ALJ's ruling became the final decision of the Commissioner. Tr. 328. Plaintiff sought judicial review in this court.

On April 1, 2003 the Commissioner moved to remand the proceedings to the ALJ pursuant to sentence six of 42 U.S.C. sections 405(g) and 1383(g). The Commissioner had found that the audio recording of the March 15, 2001 hearing was inaudible. Tr. 320. This Court granted the motion and ordered the case remanded to the ALJ for a de novo hearing. Id. The Appeals Counsel

followed suit. Tr. 324.

On December 1, 2004 ALJ Madden held a second hearing. Tr. 539-569. At that hearing, Ms. Adams and her husband again testified. Mr. McGowan did not testify, although vocational expert Vernon Arne testified.

On February 16, 2005 the ALJ found that Ms. Adams was disabled as of December 1, 1999. Tr. 29. In his second written opinion the ALJ includes verbatim sections from his first written opinion. See Tr. 21 (explaining that "those portions of the prior decision lifted into this decision verbatim will be shown in *italics*.")

Plaintiff's appeal to the Appeals Counsel was denied on June 30, 2005. Tr. 12. Plaintiff again seeks judicial review.

At the time of the ALJ's second decision, plaintiff was a 64-year-old woman. Ms. Adams has completed four years of college including a three-year registered nursing program Tr. 98. She has 24 years of past work history as a registered nurse. Tr. 93. Ms. Adams initially alleged disability as of July, 1994 due to osteoarthritis of both knees. Tr. 75. At the second hearing, Ms. Adams amended her alleged onset date to January 1, 1998. Tr. 542.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is such relevant evidence as a reasonable mind might accept

OPINION AND ORDER–3

as adequate to support a conclusion. Johnson v. Harris, 625 F.2d 311, 312 (9th Cir.1980).

The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardener, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence. Cequerra v. Secretary of Health and Human Services, 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even "where findings are supported by substantial evidence, a decision should be set aside if the proper legal standards were not applied in weighing the evidence in making the decision." Flake v. Gardener, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12

OPINION AND ORDER–4

months...." 42 U.S.C. § 423(d)(1)(A). A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity" ("SGA") Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). The ALJ found that Ms. Adams had not engaged in SGA since December 1, 1999. Tr. 29. The record indicates that Ms. Adams has not engaged in SGA since July, 1994. Tr. 546.

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). The ALJ found that Ms. Adams has severe impairments. Tr. 29.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. The ALJ found that Ms. Adams has no impairment that meets or equals the criteria of any impairment listed in 20 C.F.R. 404 app. 1, subpt P. Tr. 29.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant is so able, then the Commissioner finds the claimant "not disabled." In doing so, the Commissioner must first identify the claimant's residual functional capacity (RFC), which reflects the claimant's ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security

OPINION AND ORDER–5

Regulation (SSR) 96-8p. The ALJ found that as of December 1, 1999 Ms. Adams had the capacity to work with light exertion and that after December 1, 1999 Ms. Adams's capacity was less than sedentary. Tr. 29.

In step five, the burden rests with the Commissioner to identify work in the national economy that the claimant is capable of performing according to the claimant's RFC. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(f). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, the claimant is not disabled. 20 C.F.R. § 404.1566. If the Commissioner fails to meet this burden, then the claimant is deemed disabled. At step five, the ALJ found that before December 1, 1999 Ms. Adams retained the ability to perform the following jobs that exist in the national economy: ward clerk, office nurse, first aid attendant and phlebotomist. Tr. 28. The ALJ further found that after December 1, 1999 Ms. Adams retained no ability to work in the existing economy. Tr. 29.

The ALJ concluded that Mrs. Adams was disabled as of December 1, 1999 and therefore entitled to Disability Insurance Benefits as of that date. Tr 29-30.

## DISCUSSION

On appeal Plaintiff argues that the ALJ failed to meet his burden at step five. Plaintiff's Brief at 16. Specifically, Plaintiff argues that the ALJ failed to prove that between January 1, 1998 and December 1, 1999 Ms. Adams retained the ability to perform other work in the national economy. Id. In support of her claim, Plaintiff argues that the ALJ rejected Ms. Adams's testimony about her symptoms without giving clear and convincing reasons to do so. Id. The court agrees with Plaintiff's arguments for the reasons stated below. However, before discussing plaintiff's arguments, I turn to a brief discussion of the nature of a de novo hearing.

OPINION AND ORDER–6

//

### *De Novo* **Hearings**

At the request of the Commissioner, on April 8, 2003 this Court ordered the Commission to hold a de novo hearing in this matter. The reason for that order was plain: the audio recording of the hearing on March 15, 2001 was inaudible. Because the tape was inaudible, the Commission could not produce a transcript of the hearing. Without a verbatim record this Court was unable to conduct the review of the ALJ's decision as required by law. Therefore, when this Court granted the Commissioner's request for a de novo hearing, this Court made no judgment about the ALJ's prior decision.

A de novo hearing is "a new hearing of a matter, <u>conducted as if the original hearing had not taken place</u>." Black's Law Dictionary 738 (8th ed. 1999)(emphasis added). It follows that a de novo hearing is not a hearing where the parties attempt to recreate a prior hearing. The ALJ's second hearing in this case is, in many respects, closer to an attempt to recreate the prior hearing than a new hearing as if the original one had not taken place. While conducting the second hearing, the ALJ used notes taken by him during the first hearing and frequently referred to those notes. Tr. 542, 545-46, 557. When questioning witnesses, the ALJ summarized his recollections of the witnesses' previous testimony and asked for them to confirm his recollection. Tr. 546, 558.

Asking leading questions to witnesses using one's notes from a prior hearing may appear to save time, or at least effort. When leading questions focus on preliminary matters that are not in controversy, asking leading questions is hardly objectionable. However, where, as here, the ALJ's leading questions and references to the earlier hearing result in a confusing record, the practice is unacceptable. The record of the second hearing reads as though the ALJ was attempting to

OPINION AND ORDER–7

reconstitute the lost record from the first hearing. As a result, it is difficult to determine whether the ALJ's conclusions as stated in his cut-and-pasted decision are supported by substantial evidence.

This difficulty is best illustrated in the questioning and testimony of Vocational Expert Vernon Arne. Mr. Arne did not testify during the first hearing; Mr. McGowan testified. The ALJ's questioning of Mr. Arne could be interpreted as an attempt by the ALJ to lead Mr. Arne to come to Mr. McGowan's conclusions. A result of Mr. Arne's testimony is that we must reverse and remand for further proceedings thus requiring additional expenditure of scare judicial resources in a case that has had two full administrative hearings and has been to this Court twice.

**ALJ's Analysis at Step Five**

Plaintiff argues that the ALJ failed to meet his burden at step five: that Ms. Adams retained the ability to perform other work within the national economy. Plaintiff's Brief at 13. Specifically, Plaintiff argues that between January, 1998 and December 1, 1999 she was unable to perform "a good deal of walking or standing" and, as a result, she was limited to sedentary work. Due to Ms. Adams's advanced age an RFC limiting her to sedentary work requires a finding that she is disabled within the meaning of the Act. Plaintiff's Br. at 13-14.

From AOD of 1994 until December 1, 1999 the ALJ found that "[t]he evidence supports a finding that the claimant retained the residual functional capacity to perform at least light exertion activity." Tr. 26 The ALJ went on to explain, "*[i]n reaching this conclusion, the undersigned has considered the claimant's subjective allegations and has found them generally not credible when alleging a degree of incapacitation inconsistent with her activity and exceeding limitations*

OPINION AND ORDER–8

*supported by medical findings.*" Id.[1] The ALJ went on to note that "the only evidence upon which to establish the presence of sedentary functional limitations prior to December 1999 are the witnesses' unsupported statements." Tr. 26.

At the second hearing, Ms. Adams testified that her knee problems started in 1994. Tr. 548. She became unable to work because some days she could not walk. *Id.* After she stopped working she had two arthroscopies and several steroid injections. *Id.* Ms. Adams testified that at times her knee locks, swells, she has extreme pain and no range of motion and is unable to walk. Tr. 550. From November of 1998 until late 1999 "there were—periods of time after a steroid injection, or after the hycloric acid injections that my knee would improve for a couple of months ... but there was never a long period of time where it lasted, you know where it continued." Tr. 551.

As an initial matter I find that the ALJ rejected statements that, if true, would effect the outcome of the hearing. Specifically, the ALJ rejected Ms. Adams's testimony about the pain in her knee which, if true, could make her unable to perform the jobs identified by the vocational expert. This Court now turns to the question of whether the ALJ properly evaluated Ms. Adams's testimony.

To evaluate a claimant's testimony regarding exertional limitations, the ALJ must consider first if there is objective medical evidence of impairment which could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273,1282 (9th. Cir. 1996) citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir.1986). This test requires only that the causal relationship between the impairment and the symptom be a reasonable inference, not a medically proven phenomenon. See Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir.1986) ("[W]e have never

---

[1] The ALJ copied this conclusion verbatim from his first decision, leaving the court to struggle to determine whether the ALJ was referring to the evidence from the first hearing or the evidence from the second hearing or neither.

OPINION AND ORDER–9

required that the medical evidence identify an impairment that would make the pain inevitable."). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence. But the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). If the ALJ makes such a finding, and there is no evidence of malingering, the ALJ can reject the claimant's testimony only if the ALJ gives clear and convincing reasons to do so. Smolen, 80 F.3d at 1284-85.

A review of the record shows that during the period in question, January 1, 1998 until January 1, 1999 there is objective medical evidence of impairment. Specifically, there is evidence that Ms. Adams suffers from osteoarthritis in her left knee. Tr. 321 This medical impairment could reasonably be expected to produce the pain complained of by Ms. Adams. Furthermore, there is no evidence that Ms. Adams is malingering.

The ALJ gave the following reasons for rejecting Ms. Adams's testimony: first, she was more active before December 1, 1999 than her alleged disability would allow Tr. 25-26; second, that her "current testimony" portrays her as "minimally ambulatory" and that testimony is contradicted by medical evidence, Tr. 26; and, third, by changing her AOD by three years she effectively repudiated her prior testimony and other statements alleging serious incapacity between 1994 and 1998. Id. I address each of these reasons separately.

The first reason given by the ALJ was the same reason he gave for rejecting her testimony in the first hearing. Because the ALJ copied this finding verbatim from his previous decision, it is impossible to determine with any accuracy whether he has made any independent judgment about

her testimony in the second hearing. Nevertheless, a review of the administrative record reveals that the ALJ's finding is without support.

In reaching his conclusion regarding Ms. Adams's testimony, the ALJ considered Ms. Adams's medical records from 1994 through 2001. Tr. 22-24. The ALJ noted portions of the records that showed Ms. Adams engaging in activities such as "shopping, climbing stairs, playing 18 holes of golf, performing all household activities without difficulty, being able to walk as far as she wanted without stopping , regularly walking eight miles on a treadmill, golfing frequently and being able to walk 18 holes of golf." Tr. 24  However, the relevant period of time is the period between January 1, 1998 and December 1, 1999. Many of the records cited by the ALJ regarding Ms. Adams activities predate January 1, 1998.

For example, the record indicates that Ms. Adams was attempting to walk "up to eight miles per week" during late 1994. Tr. 239.[2] Furthermore, a single record dated September 9, 1996 indicates that at that time Ms. Adams could walk 18 holes of golf; walk on level ground, and complete all household activities without difficulty. Tr. 233. Therefore, the ALJ's first reason for rejecting Ms. Adams's testimony about her physical limitations is not supported by the record.

The ALJ's second reason to reject Ms. Adams's testimony is also not supported by the record. The ALJ concluded that Ms. Adams's testimony about her physical limitations is not supported by medical findings in the record. First, the ALJ cited a July, 1999 treadmill test where no knee problems were noted. Tr. 25 citing Tr. 456. According to the record, the purpose of this test was to determine the cause of an irregular heart beat, not to test her tolerance for walking or standing. Although the report from the test indicates that her "exercise tolerance was good," the test was

---

[2] There is no record stating that Ms. Adams ever walked eight miles at one time.

OPINION AND ORDER–11

"terminated due to fatigue." Tr. 456. Nothing in this report or in the rest of the record indicates that these observations have any relevance other than to her cardiac health.

Next, the ALJ refers to two visits in 1999 by Ms. Adams to her physician, Dr. Olson, where, according to the ALJ, she said she was "feeling well." During those visits she was being seen for hypertension not for her knee problems. During 1998 and 1999 Ms. Adams was seeing Dr. Mohler, not Dr. Olson, for her knee problems. Furthermore, a complete quote from that record reads, "She is feeling well, has no cardiac symptoms. Her BPs have consistently been in the 130/80 range at home. She is feeling well. Has no dyspnea or other complaints." Tr. 454.

The final record relied upon by the ALJ is a report from physical therapy. See Tr. 452. The ALJ characterizes this record as one showing that Ms. Adams's knee flared-up and then responded to treatment. Tr. 25. In fact, in August, 1999 Ms. Adams was receiving treatment for a back strain that had been chronically exacerbated for over a year. The physical therapy was not for her osteoarthritis.

The ALJ further relies on that same record to support his conclusion that in August of 1999 Ms. Adams said that "she could play 18 holes of golf in riding in a cart, 12 if she walked and carried her own clubs. That earlier admission contradicts her recent testimony indicating that prior to December 1999 she played a maximum of nine holes of golf at one time, and even then rode in a cart rather than walk the links." Tr. 25 The ALJ's characterization is inaccurate. The physical therapy record says, "Pt can play 12 holes of golfs [sic] pain when pulling her clubs or 18 holes when riding in a cart." Tr. 452.

During her testimony, the ALJ questioned Ms. Adams about Dr. Mohler's records, which span the entire period of 1994 to 1999, and told her that the records indicated that she played 18

OPINION AND ORDER–12

holes of golf and exercised on a treadmill six times a week. Tr. 551. Ms. Adams testified that while she never walked 18 holes of golf she played some golf when her knee was feeling better, such as times after she received a painkilling or steroid injection. Tr. 551-553. Comparing the details of the medical records with Ms. Adams's testimony shows no inconsistency.

According to her medical records, between 1998 and 1999 Ms. Adams saw her physician every four to six months for treatment of her knee pain. She consistently told her physician that her knee felt well for several months after an injection, then the pain would return and she would be restricted in her activities. Tr. 182, 183, 187, 228, 230, 231.

The ALJ's third basis for rejecting Ms. Adams's testimony is also unconvincing. During the second hearing, Ms. Adams's attorney amended her AOD from July, 1994 until January 1, 1998. Tr. 542. When asked what was the significance of January, 1998 the attorney replied, "[w]ell, there's nothing other than frankly she applied in January 2000, and that's more than 17 months prior to that date so." Tr. 543. The ALJ interpreted the Plaintiff's amendment of the AOD as a repudiation of her prior testimony. The ALJ gave no factual or legal basis reason for that conclusion. Furthermore, he failed to consider whether the Plaintiff's amendment of her AOD was simply technical and an attempt to "simplify things" as noted by Plaintiff's attorney. Tr. 542. Therefore, the ALJ's third reason for rejecting Ms. Adams's testimony is unconvincing.

Because I conclude that the ALJ rejected Ms. Adams's testimony without giving clear and convincing reasons to do so, I turn to the question of whether or not to remand for further proceedings or for benefits.

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing

OPINION AND ORDER–13

Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985)). Remand is appropriate where further proceedings would resolve defects in the administrative proceedings. However, where new proceedings would simply serve to delay the receipt of benefits and would not add to the existing findings, an award of benefits is appropriate. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). An award of benefits is warranted when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)(quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Ms. Adams's testimony. However, there are legal issues to be resolved. Specifically, the ALJ needs to determine Ms. Adams RFC and, if necessary, conduct an analysis at Step 5.

Plaintiff argues that if Ms. Adams's testimony is credited as true, then she must be limited to sedentary work because light work requires a substantial amount of walking. Plaintiff's Brief at 14. Plaintiff notes that under 20 C.F.R. section 404.1567(b) "light" jobs require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id quoting 20 C.F.R. § 404.1567(b). Plaintiff then reasons that because the jobs listed by the vocational expert do not require pushing and pulling of arm or leg controls, then those jobs must require a "good deal of walking or standing." The regulations are not so concrete. To qualify for light exertional work, a claimant "must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). Plaintiff has given no legal basis for concluding that Ms. Adams's testimony, if credited as true, means that she was unable to do light exertional work. This

OPINION AND ORDER–14

issue must be determined by the ALJ on remand.

Furthermore, at the hearing Plaintiff failed to ask alternative hypothetical questions to establish a finding that Ms. Adams, given her limitations between January 1, 1998 and December 1, 1999 she was able to engage in any work that existed in significant numbers in the national economy. Instead, Plaintiff inquired only about an assessment made by Dr. Mohler on February 21, 2001. See Tr. 566 citing Tr. 265.

Therefore, I reverse and remand for further proceedings. The ALJ shall credit Ms. Adams's testimony as true and conduct again steps four and five of the analysis. See Harman v. Apfel, 211 F.3d 1172 (9th Cir. 2000); Hammock v. Bowen, 879 F.2d 498 (9th Cir. 1989).

## CONCLUSION

For these reasons, the ALJ's reasons for rejecting Ms. Adams's testimony were legally insufficient. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for further proceedings in accordance with this decision.

IT IS SO ORDERED.

DATED this 9 day of November, 2006

                                                   Ann Aiken
                                    United States District Judge